J. C. CHITTY ET AL. v. J. J. PARKER ET AL.

(Filed 4 October, 1916.)

**1. School Districts — Petitions — Conditions Precedent — Jurisdictional — Statutes.**

The signing of the petition by the requisite number of the resident freeholders in a proposed new school district, Gregory's Supplement, sec. 4115, is a condition precedent and jurisdictional to the establishment of the district by popular vote therein, and noncompliance therewith renders the subsequent proceedings void.

**2. Same—Women.**

In ascertaining the necessary number of resident freeholders for a petition in a proposed new school district, Gregory's Supplement, sec. 4115, women freeholders must be counted. Ch. 22, Laws 1915.

**3. School Districts—Petition—Qualifications—Listing Property.**

Resident freeholders of a proposed new school district, who have not listed their property within the district for taxation, are not to be counted in ascertaining whether the petition has the requisite number of signers. Gregory's Supplement, sec. 4115.

**4. School Districts—Petition—Qualifications—Freeholders—Temporary Absence.**

Those who have temporarily left the proposed new school district, but having the *animus revertendi* and the statutory requirements, are to be counted in ascertaining whether a sufficient number of resident freeholders in the district have signed the petition; also those who have dower interests in lands therein, heirs at law of an estate, a resident tenant in common of lands, landowners at the time who died before the election was ordered, and a resident wife who holds lands in entireties with her husband; but an inmate in an insane asylum in another State will not be counted as a resident freeholder of the proposed district.

**5. School Districts—Petition—Qualifications—Listing Property—Taxes.**

Those who are residents of the township, but outside of a proposed new school district, are not to be counted in ascertaining whether a sufficiency of the resident freeholders have signed the petition for an election. Gregory's Supplement, sec. 4115.

**6. School Districts—Petition—Enlarging District—Ratification—New Petition.**

Where the boundaries of a proposed new school district have been changed since the signing of the petition by the resident freeholders within the district first proposed, the original petition is not sufficient, unless again submitted to the signers thereof for their approval and ratification; and the assent to the change of boundaries by the signers present at the hearing on the petition is not sufficient. The proceedings may, however, be commenced *de novo*.

·Appeal by plaintiffs from *Winston, J.*, at July Term, 1916, of HERT-FORD.

*R. C. Bridger and J. H. Matthews for plaintiffs.*
*Stanley Winborne and D. C. Barnes for defendants.*

CLARK, C. J. This is an action by certain taxpayers in a proposed special-tax school district in Hertford County to restrain the defendants, registrar and judges of election in said district, from making the canvass and return of said election to the board of county commissioners of Hertford and to restrain said county commissioners from receiving the returns, declaring the result, and from levying a tax in said district.

Pursuant to sundry acts summed up in Gregory's Supplement, sec. 4115, the board of education of Hertford, on a petition filed on the first Monday in May, 1916, purporting to be signed by one-fourth of the resident freeholders of the proposed district, requested the county commissioners to call an election therein, submitting the question of establishing said district and levying a special tax. The commissioners, in compliance with said petition and request, ordered said election to. be held, and appointed the defendants Parker, Pipkin, and Gardner registrar and judges thereof.

Said section 4115 authorizes the laying off of said districts and the ordering of an election "upon the petition of one-fourth of the freeholders within the proposed special-tax school district in whose name real estate in such districts is listed in the tax lists of the current fiscal year."

In *Gill v. Comrs.*, 160 N. C., 176, it was held that women were not "freeholders" in the purview of this act; but subsequently the General Assembly, ch. 22, Laws 1915, enacted as follows: "In all cases where a petition by a specified number of freeholders is required as a condition precedent to ordering an election to provide for the assessment or levy of taxes upon realty, all residents of legal age owning realty for life or a longer term, irrespective of sex, shall be deemed freeholders within the meaning of such requirement." The requirement that the petition shall be signed by one-fourth in number of the freeholders, male or female, in the proposed district is a condition precedent, and is jurisdictional. *Gill v. Comrs., supra.*

The plaintiffs contend that fourteen names, which they give, most of whom are women, were not counted, and that if they are counted it will be found that one-fourth of the freeholders in said proposed district did not sign the petition. But they admit that unless thirteen of these names are entitled to be counted as freeholders this point is not well taken; that is, they admit that if as many as two of the names given are disallowed as freeholders this point is not well taken. We find that no

property was listed for taxation in the names of two of said parties, to wit, Winborne Wheeler, who lived on land which belonged to his father, but which had been sold under mortgage prior to signing this petition,. and deed made to purchaser, who went into possession, and Laodicea Parker, who resides on land which belonged to her husband and in which she is entitled to dower, but which had not been listed for taxes. Elisha Hicks owns a tract of land within the boundary, but he is now an inmate of an insane asylum in Virginia, and his wife went to that State. He is not a resident, can have no *animus revertendi,* and should not be counted.

As to the other eleven, Molly Parker, landowner, who was temporarily absent in a hospital and will return when discharged, should be counted. Also Miss Corinne Parker, who owns and resides on land within the boundary, but who was at times temporarily away from home working at her trade as a milliner, should also be counted, these having the *animus revertendi. Hannon v. Grizzard,* 89 N. C., 115, and cases cited in the Anno. Ed. Mrs. W. D. Deans, who resides on the land of her husband, which is listed in the name of his estate, and Virginia Wilson, widow of Joe Wilson, as to which the facts are the same, both of whom it is admitted are entitled to dower, should also be counted. Charles Watson, son and heir of Charles Watson, deceased, also resides on land listed in the name of "Charles Watson's estate"; Harry Newsome and Annie Newsome, who are heirs at law of Isaac Newsome, who reside on the land in said district listed as "Isaac Newsome's estate," and Miss Williamson, who lives on land which she owns jointly with her brothers and sisters, who are nonresidents, which land is listed in the name of the "Williamson heirs," should also be counted. James Lawrence and Tony Deans were landowners residing within the boundary whose lands were listed for taxes, but who have died since the election was ordered. They should be counted, because the petition speaks as of its date; also Mrs. Liverman, cotenant in entireties, the land being listed in her husband's name.

It appears from the above fourteen names, that Winborne Wheeler was not a freeholder; that Laodicea Parker, though entitled to dower interest in her husband's estate, had not listed the land for taxes, and that Elisha Hicks was not a resident. These three being disqualified, according to the plaintiffs' own showing, one-fourth of the freeholders of land listed in the district signed the petition, which is valid, therefore, so far as that objection goes.

The plaintiffs further object that the board did not count the number of freeholders residing in the territory of the township outside of the proposed district. This objection is not well founded, for the statute requires only that the petition shall be signed by one-fourth of the freeholders "within the proposed special school district."

The plaintiffs further object because the board of county commissioners on 5 June, 1916, permitted a change in the boundaries of the district as set out in the original petition to be made by the board of education without submitting it again to the signers thereof for their approval and ratification.

Assent by the signers present at the hearing is not sufficient. We think this was error which vitiated and made void the petition, which was the jurisdictional question upon which the validity of the election depended. It may well be that with the changed boundaries some of the petitioners, if the question had been again presented to them, might have refused to ratify their signatures to the former petition asking for a district with different boundaries. This change was presumably material, else the boundaries would not have been changed. It appears that $15,000 in property and seventy-five voters were excluded by the change.

The requirement that one-fourth of the freeholders of land lying in the district and listed for taxation should sign the petition is a protection to the landowners in any given district against taxation which otherwise might be voted by a majorty consisting of nontaxpayers.

For the reason above given the election should have been held null and void and a perpetual injunction should have been issued against levying the tax.

Should one-fourth of the resident freeholders irrespective of sex owning land within said district (with the present boundaries) listed for taxation sign the petition, and a majority of the registered voters therein shall vote for the special tax, this can still be done; but the election cannot be sustained upon a petition, though signed by one-fourth of the said freeholders, when it appears that the boundaries set out in such petition were different from those of the district in which the election was ordered.

Reversed.